# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

GENE WAGERS, JR.,

        Petitioner,                       Case No. 3:13-cv-031

                                          District Judge Walter Herbert Rice
    -v-                                 Magistrate Judge Michael R. Merz
                            :

Warden, Lebanon Correctional Institution,

        Respondent.

---

# REPORT AND RECOMMENDATIONS

---

This is a habeas corpus case brought *pro se* by Petitioner Gene Wagers, Jr., to obtain release from five concurrent terms of life imprisonment he is serving in Respondent's custody after conviction in the Preble County Common Pleas Court on four counts of rape in violation of Ohio Revised Code § 2907.02(A)(1)(b), one count of rape in violation of Ohio Revised Code § 2907.02(A)(2), four counts of sexual battery in violation of Ohio Revised Code § 2907.03A)(5), and one count of disseminating material harmful to juveniles in violation of Ohio Revised Code § 2907.31(A)(3), the first nine counts carrying a sexually violent perpetrator specification (Petition, Doc. No. 2, ¶ 5, PageID 2).

Wagers pleads the following Grounds for Relief:

**Ground One:** Insufficient Evidence

**Supporting Facts**: There is no physical evidence of an abuse. The police did not even investigate the allegations for over 3 years. The alleged victim's testimony is unbelievable. There is no evidence even to support the SVP specification. Nothing was proven at all, much less beyond a reasonable doubt. This violates Due Process.

1

**Ground Two**:  Ineffective Assistance of Trial Counsel.

**Supporting Facts**:  Counsel failed to object to the Carbon-copy Indictments, SVP specs, nor did he move for bifurcation of the Guilt and Specification Phases of the Trial.  Counsel failed to request a specific date instruction for the Jury on the separate counts.  Counsel failed to use peremptory strikes one of which should have been a juror who worked with victim's mother. Counsel failed to object to expert witnesses' qualifications, failed to object to medical opinions which did not comport with Evid. Rules 702, 703, 704.  Failed to object to improper testimony, hearsay testimony, improper bolstering, Infringement of the Presumption of Innocence Testimony, and failed to request a curative instruction.  Trial Counsel also failed to object to the Retroactive Application of the Adam Walsh Act.

**Ground Three**:  Ineffective Assistance of Trial Counsel (Outside the Record)

**Supporting Facts**:  Trial Counsel did not inform the Petitioner of a plea bargain offered by the State, and failed to investigate and present testimony of several key exculpatory witnesses and Counsel failed to investigate and present the case notes from Children's Services and the Medical report and exam notes.  This violates the Petitioner's Right to the effective assistance of Counsel, guaranteed by the Sixth Amendment of the U.S. Constitution.

**Ground Four**:  Defective Indictment.

**Supporting Facts**:  The Indictment contained all Carbon-copy charges, ranging over a 4-year period, with no differentiation to allow the jury to find on each separately.  It contained improper SVP specifications and violated [Ohio Revised Code §] 2971.01 as it existed during the time span alleged in violation of Due Process.

**Ground Five**:  The trial court failed to bifurcate the proceedings, in violation of Due Process.

**Supporting Facts**:  The Trial Court, rather than adhere to statute, tried this Petitioner simultaneously on the sex offenses and Sexually Violent Predator Specifications, which resulted  in structural error, and violated this Petitioner's Constitutional Right to a Fair Trial and Due Process of Law guaranteed by the 5th and 14th Amendments.

**Ground Six:** Erroneous Evidentiary Rulings

**Supporting Facts:** The Court erred in admitting and playing the interview of the alleged victim with the Child assessment Center, as well as the report of that agency, in violation of the Petitioner's 5th 6th and 14th Amendment Rights to a Fair Trial, the Confrontation Clause, and Due Process, as well as the Trial Court's refusal to grant a mistrial for violations of Evidence Rules 404, 608 and 609.

**Ground Seven:** Sentencing Error.

**Supporting Facts:** The State admitted that the error had occurred, yet the Court disregarded this admission and sentenced the Petitioner to five life terms. The Court further erred in using Law that was not even in force at the time of the alleged offenses. When a Court knowingly imposes a sentence in error, the Petitioner's Constitutional Rights to a Fair Trial and the Due Process of Law, guaranteed by the 5th and 14th Amendments of the U.S. Constitution, are violated.

**Ground Eight:** Cumulative Effect

**Supporting Facts:** All of the errors committed at Trial and Sentencing rose to the level of a violation of Due Process and the denial of a fair Trial, guaranteed by the 5th and 14th Amendments.

(Petition, Doc. No. 2, PageID 8-16.)

The case is before the Court for initial review under Rule 4 of the Rules Governing §

2254 Cases which provides in pertinent part:

> If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.

Because Petitioner raised his claims in the state courts and the state appellate court decisions are

publicly available, the Court is able to consider them in its Rule 4 analysis.

3

## Analysis

### Ground One:  Insufficient Evidence

In his First Ground for Relief, Wagers asserts he was convicted on insufficient evidence. On direct appeal to the Ohio Twelfth District Court of Appeals, he raised this claim, along with a claim that the conviction was against the manifest weight of the evidence, in his Fifth Assignment of Error.  The court of appeals decided this assignment of error as follows:

[*P69] Assignment of Error No. 5:

[*P70] "APPELLANT'S CONVICTIONS WERE BOTH AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WERE NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION."

[*P71] Next, appellant argues his convictions were against the manifest weight of the evidence and were not supported by sufficient evidence. Whether the evidence presented is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541. An appellate court, in reviewing the sufficiency of the evidence supporting a criminal conviction, examines the evidence in order to determine whether such evidence, if believed, would support a conviction. *State v. Carroll*, Clermont App. Nos. CA2007-02-030, CA2007-03-041, 2007 Ohio 7075, P117. After examining the evidence in a light most favorable to the prosecution, the appellate court must determine if "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

[*P72] Unlike a sufficiency of the evidence challenge, a manifest weight challenge concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other. *Carroll* at P118. An appellate court considering whether a conviction was against the manifest weight

4

of the evidence must review the entire record, weighing the evidence and all reasonable inferences, and consider the credibility of witnesses. *State v. Good*, Butler App. No. CA2007-03-082, 2008 Ohio 4502, P25, citing *State v. Hancock*, 108 Ohio St.3d 57, 2006 Ohio 160, P39, 840 N.E.2d 1032. Under a manifest weight challenge, the question is whether, in resolving conflicts in the evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *Good at P25*.

[*P73] Appellant first argues the evidence was insufficient to support the SVP specifications. We have previously addressed and resolved this issue in appellant's first and second assignments of error.

[*P74] Next, appellant argues there was insufficient evidence of "sexual conduct" to support convictions of rape and sexual battery, pursuant to R.C. 2907.01. Specifically, appellant argues the testimony of J.W., wherein she described that appellant stuck "his dick in her butt" and "put his hands in her crotch," were not sufficient. R.C. 2907.01(A) defines "sexual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." Appellant cites no authority for his proposition, and it is unclear as to why appellant argues the above two acts, as described by J.W., who testified as a 13-year-old and who was between the ages of six and ten when the acts occurred, do not constitute the insertion, however slight of any part of the body into the vaginal or anal cavity of another. Appellant's assertion is wholly without merit.

[*P75] Appellant also claims his convictions were against the manifest weight of the evidence because the only evidence that supported the verdict were J.W.'s allegations of abuse that occurred several years prior to her testimony. Appellant contends that the remainder of the testimony "supported the defense."

[*P76] At trial, J.W. testified that she was six years old and living in a house at 47 1/2 North Main Street in Camden, Ohio, when appellant, her biological father, first sexually abused her. She stated that appellant told her brother to go take a bath and "not come out until he told him to." Then, appellant took J.W. into his bedroom and "stuck his dick in [J.W.'s] butt." J.W. was on her

stomach when it happened. Appellant stopped when someone knocked on the front door or rang the doorbell. J.W. testified that her mother was in the hospital "getting ready to have [her sister]." She also testified that she felt a lot of pain from "her butt" after the incident. J.W. stated that this was the only time she remembered being abused in that house.

[*P77] J.W. then testified that while she was living in a trailer with her family, she fell out of her bed once and her nose started bleeding. Appellant kept her home from school that day, and took her in his bedroom, laid her on the bed, and "stuck his finger in her crotch." She remembers being eight years old at the time because she was in the second grade. Her mom was at work at the time. She remembered feeling a lot of pain, that his fingers were pushing, and that it was not the first time it had happened. She testified that she bled afterwards and went to the bathroom and wiped away the blood.

[*P78] J.W. also remembered the day before her birthday, when her mom was out shopping and her brother and sister were in bed, appellant was laying on the couch and told her to "come in there and put a cover up." He then "stuck his dick in [her] butt." She said she felt a lot of pain, and afterward, she "went to [her] bedroom and got a new pair of underwear" because "there was white stuff in [her] panties." J.W. stated that she did not remember any other incident in that house.

[*P79] J.W. then testified about events that occurred while she and her family were living at 53 North Main Street in Camden, Ohio, a house located across from the police station. She testified that she was sleeping upstairs in her brother's room, and appellant "came upstairs with baby oil and a rag." She stated that her father put baby oil on the rag and "rubbed it on [her] crotch." When asked to clarify, she stated that her "crotch" is her "vagina." She testified that appellant then "tried to stick his dick in [her] crotch." She stated that "it was painful, and it wouldn't fit." She knew it was his "dick" because "it was bigger. It was big and his fingers weren't." She said appellant "tried to shove it in," but "it wouldn't fit, so he went back downstairs." J.W. then had to "clean up" her "privates" because "there was white stuff on [her]."

[*P80] She recalled another time she was abused while living at 53 North Main. She was watching "Malcom in the Middle" on television with her family when appellant told her to "get him a pop." When her little sister ran in and got it instead, appellant said J.W. was in trouble. He took her into the bedroom and he told her

6

to "get down on [her] knees." He made her "suck his dick," and he "stuck his fingers in [her] crotch." She was "moving [her] mouth up and down" -- the way appellant told her to do it -- while he "had his hand down there." She also testified that she was made to "suck his dick" every other time he "made [her] have sex with him." By "sex," she meant "every time he put his dick in my butt." She testified that nothing happened this particular time, as opposed to other occasions, where "white stuff" went "into [her] mouth." Also, at this same location, appellant told J.W. to "keep this our little secret."

**[\*P81]** J.W. also remembered a time when appellant made her watch a "bad movie" with him in the living room while her mother was sleeping. She testified that she watched appellant's two friends having sex, and while watching the movie, appellant made her "suck his dick." She remembered it being dark outside.

**[\*P82]** J.W. testified that she remembered her dad using a vibrator on her -- he "put it on [her] crotch," but "he didn't put it in."

**[\*P83]** Also while living at 53 North Main, appellant touched her "crotch area" with "his tongue." J.W. testified that it was "wet" and "he just licked." She recalled that this incident happened in appellant's bedroom and she was nine years old.

**[\*P84]** J.W. testified that she started her menstrual cycle when she was in the fifth grade -- during class -- but told her mother once that she started her period when she was nine, following an incident with appellant, who made her bleed "for a week." J.W. testified that her mother wanted J.W. to "pee in a cup for her," and J.W. had to tell her mother that she was bleeding. She then recalled the incident that caused the bleeding, wherein appellant took her into his bedroom, laid her on the bed, and "stuck his dick in [her] crotch."

**[\*P85]** J.W. testified that she went to live with her aunt "when she was almost ten." Shortly thereafter, her aunt "kind of tricked [J.W.] into telling her" about the sexual abuse.

**[\*P86]** J.W.'s testimony was consistent with the DVD recording and written report of her interview with the social worker with the CCFA at Children's Hospital, which was done in July 2006, one year after J.W. confided in her aunt. In addition to the specific examples provided above, J.W. provided numerous details regarding other instances of continuous and regular sexual abuse

by her father. J.W. stated that appellant abused her every other night while they were living at 53 North Main.

[*P87] Dr. McPherson, the doctor who observed the interview and conducted the physical examination of J.W., testified that J.W.'s advanced sexual knowledge, considering her age, and her description of what happened to her body when the abuse occurred was consistent with a child who has experienced sexual abuse. In addition, he opined that some of her reported behavior issues and her delay in disclosing the abuse were all normal for children who have been sexually abused by a parental figure.

[*P88] Appellant asserts that because Dr. McPherson, in the physical examination of J.W., found no physical injuries as a result of any abuse, his conviction was against the manifest weight of the evidence. During his testimony, however, Dr. McPherson explained that in over 1,400 children that he has examined, he has found physical findings of abuse in only ten percent of those children. He explained that many children do not exhibit physical evidence of abuse because their bodies heal very quickly after the abuse. Finally, Dr. McPherson, in his report, medically concluded that J.W. suffered abuse and he recommended treatment of counseling and further testing.

[*P89] J.W.'s testimony was also consistent with the testimony of her Aunt Dotty, and her mother, Ms. Eichorn.  Both Aunt Dotty and Ms. Eichorn stated that J.W. and her siblings went to live with Aunt Dotty on May 19, 2005, just before J.W.'s tenth birthday. Aunt Dotty also corroborated J.W.'s testimony as to how and when J.W. confided in her regarding the abuse. Aunt Dotty said she received a phone call from J.W.'s mother, who suspected the abuse, approximately a month after the children went to live with her, and Aunt Dotty told J.W. that she "already knew," at which time J.W. confided in her. Aunt Dotty thereafter contacted Children's Services in Scioto County and started the process of treatment for J.W.

[*P90] Ms. Eichorn also corroborated details of J.W.'s testimony -- that she was in the hospital with high blood pressure issues before the birth of her youngest daughter, that J.W. told her at age nine that she had started her period, but that it was an isolated incident, that she kept vibrators in her dresser drawer, and that she and appellant had pornographic videos in their possession while living at 53 North Main, which included a video depicting appellant's friends engaging in sexual activity.

8

[*P91] Appellant urges this court to assume that because J.W. lied about her age on a MySpace page created years after she first reported the abuse, she lied about the abuse, and that because she was unable to remember the names of some of her teachers she had during the timeframe of her abuse, her testimony was "simply unbelievable." In reviewing the record, in weighing the evidence and all reasonable inferences, in considering the credibility of the witnesses, and in resolving any conflicts in evidence, we find the jury clearly did not lose its way in convicting appellant of five counts of rape, four counts of sexual battery, and one count of disseminating harmful material to juveniles. See *Carnes*, 2006 Ohio 2134, P58. Appellant's fifth assignment of error is therefore without merit.

*State v. Wagers*, 2010 Ohio 2311, 2010 Ohio App. LEXIS 1904 (Ohio App. 12th Dist. May 24, 2010)(hereinafter "*Wagers DA*.")

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358  (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders,* 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.

[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a

> reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006);

*United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007).  This rule was

recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E. 2d 492 (1991).  Of course,

it is state law which determines the elements of offenses;  but once the state has adopted the

elements, it must then prove each of them beyond a reasonable doubt.  *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after

enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132,

110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009).  In a sufficiency of the evidence habeas

corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008).

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith,* 565 U. S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*). And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U. S. ___, ___, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam).*

When the Twelfth District Court of Appeals' decision on direct appeal is examined in light of the applicable United States Supreme Court precedent, it is clear that the appellate court applied the correct law and did so in an objectively reasonable fashion. There is ample direct testimony from the victim to support the conviction. Her testimony was corroborated by others to whom she revealed the abuse nearly as soon as she was safely out of Petitioner's custody. The expert witness testimony, while not directly confirming the abuse, helped explain to the jury what might appear to be anomalous facts: the lack of physical injury and the victim's sexual precocity. There was indeed ample evidence which the jury believed. That is all that the Fourteenth Amendment requires.

Wagers' First Ground for Relief is without merit and should be dismissed with prejudice.

11

**Ground Two:  Ineffective Assistance of Trial Counsel**

In his Second Ground for Relief, Petitioner asserts he received ineffective assistance of trial counsel in several different ways.  The Sixth Amendment to the Constitution guarantees that criminal defendants will receive the effective assistance of counsel at trial and on appeal.  The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142

F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally*

Annotation, 26 ALR Fed 218.

Wagers pled a claim of ineffective assistance of trial counsel on direct appeal as

Assignment of Error No. 7. The court of appeals decided that claim as follows:

[*P96] Assignment of Error No. 7:

[*P97] "TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE 6TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 10, 16 OF THE OHIO CONSTITUTION."

[*P98] Appellant claims his trial counsel performed deficiently, prejudiced his case, and affected the outcome of the proceedings. In making this argument, appellant provides a laundry list of reasons why trial counsel was ineffective.

[*P99] In order to establish ineffective assistance of counsel, an appellant must satisfy a two-part test. *State v. Bradley* (1989), 42 Ohio St.3d 136, 141, 538 N.E.2d 373. Appellant must show that "counsel's representation fell below an objective standard of reasonableness," and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Sanders*, 94 Ohio St.3d 150, 151, 2002 Ohio 350, 761 N.E.2d 18, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L. Ed. 2d 674. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Bradley* at 142, quoting *Strickland* at 694.

[*P100] "Judicial scrutiny of counsel's performance is to be highly deferential and reviewing courts must refrain from second-

13

guessing the strategic decisions of trial counsel." *State v. Sallie*, 81 Ohio St.3d 673, 674, 1998 Ohio 343, 693 N.E.2d 267, quoting *State v. Carter*, 72 Ohio St.3d 545, 558, 1995 Ohio 104, 651 N.E.2d 965. To establish ineffective assistance of counsel, "the appellant must overcome the strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.*

[*P101] First, appellant argues that trial counsel failed to object and did not move to dismiss the indictment and SVP specifications. Appellant also asserts that trial counsel should have moved for a bifurcation of the guilt and specification phases of the trial. As previously addressed in appellant's first and second assignments of error, we find no error in the indictment and inclusion of SVP specifications. Also, although the guilt and specification phases of the trial should have been bifurcated, as previously discussed, any resulting error was harmless. Thus, appellant's arguments fail.

[*P102] Next, appellant argues that "counsel should have proposed a jury instruction that required the jury to find a specific and different offense for each of the carbon copy counts of rape." Appellant fails to show how in failing to do so, counsel's performance was deficient and how the outcome of the trial would have been different had trial counsel proposed an unnecessary jury instruction.

[*P103] Appellant also argues that trial counsel "used his peremptory strikes on potential jurors that would have been dismissed for cause because they knew law enforcement officials who were to testify against [appellant]." Appellant has failed to cite to any authority for his proposition. Moreover, he has failed to establish that defense counsel was deficient or that he was prejudiced by defense counsel's use of peremptory challenges during voir dire. See *State v. Miller*, Butler App. No. CA2009-04-106, 2010 Ohio 1722, P31-38.

[*P104] Next, appellant claims counsel was ineffective because he (1) failed to object to Dr. McPherson's qualifications as an expert witness in pediatrics under Evid.R. 702, (2) failed to object to Dr. McPherson's medical opinions not offered to a reasonable degree of medical certainty pursuant to Evid.R. 703 and 704, (3) failed to object to Dr. McPherson's testimony regarding his examination of children who showed no signs of abuse, (4) did not object to the comments made by J.W. and Ms. Eichorn regarding appellant's jail sentence and did not ask for a curative instruction following the

14

testimony, (5) failed to object to the state's "consistent eliciting of hearsay and improper bolstering," including "what J.W. allegedly told her mom," "what witnesses told Detective Miller," "what J.W.'s mother told Ms. Wysong," "what J.W. told Ms. Wysong," "what Aunt Dotty told Ms. Wysong," the "inadmissible double hearsay of what Ms. Eichorn told Aunt Dotty about friends who told Ms. Eichorn about the abuse allegedly endured by J.W.," "what J.W. told Aunt Dotty," "what Ms. Eichorn told Aunt Dotty," "what J.W. told [appellant's] mother, Mossy Wilburn," "what Mossy Wilburn told Aunt Dotty," and "what J.W. told her mom," (6) should have "reiterated his objection to J.W.'s interview and report," (7) did not challenge the admission of facial or body reactions of witnesses when the underlying specific statement was not entered into evidence, and (8) did not object to testimony by Aunt Dotty that appellant gave no answer and looked at the floor when she confronted him about the abuse. Appellant again fails to cite any authority for the majority of proposed errors listed above. Not only are several of appellant's contentions of alleged errors factually and legally inaccurate, but he also fails to state how he was prejudiced by any of the alleged errors.

[*P105] Appellant asserts that trial counsel was also deficient when he failed to enter an objection or assert prosecutorial misconduct for "the state's use of hearsay and bolstering of J.W.," yet appellant fails to explain how the state bolstered J.W.'s testimony or how he was prejudiced by such alleged bolstering.

[*P106] Lastly, appellant claims trial counsel was ineffective because he did not enter objections to the court's sentence "and its use of the SVP specification and R.C. 2971.03 and its retroactive application of Ohio's Adam Walsh Act to [appellant]." As previously discussed, the trial court did not err in sentencing appellant; therefore, trial counsel could not have been ineffective for failing to object to the sentence imposed. Also, in *State v. Williams*, Warren App. No. CA2008-02-029, 2008 Ohio 6195, this court held that Senate Bill 10 is not unconstitutionally retroactive. Id. at P36.

[*P107] Appellant's list of alleged deficiencies in trial counsel's performance is without merit. His seventh assignment of error is overruled.

*Wagers DA*, ¶¶ 96-107. With respect to each one of the alleged incidents of defective performance by trial counsel, the court of appeals explained why the performance was not

deficient or why Wagers had not shown any prejudice resulting from counsel's performance.  In deciding this assignment of error, it applied *State v. Bradley*, 42 Ohio St. 136 (1989), which imported the *Strickland* standard into Ohio case law.

The court of appeals' decision on this Assignment of Error is neither contrary to nor an objectively unreasonable application of clearly established Supreme Court precedent.  Ground Two for Relief should therefore be dismissed with prejudice on the merits.


**Ground Three:  Ineffective Assistance of Trial Counsel – Evidence Outside the Record.**


In his Third Ground for Relief, Wagers raises additional claims of ineffective assistance of trial counsel which he asserts are supported by evidence outside the record.

Under Ohio law, claims of constitutional violations which depend on evidence outside ("dehors") the record can be brought in a petition for post-conviction relief under Ohio Revised Code § 2953.21.  Petitioner did so, but was unsuccessful at the trial court level which found all of his claims barred by the Ohio criminal *res judicata* doctrine and, alternatively in the case of an allegedly uncommunicated plea offer, without merit because the offer was communicated.  He again appealed to the Twelfth District Court of Appeals.  That court upheld the dismissal, holding as follows:

> **[*P17]** Wagers asserts that his ineffective assistance of counsel claim is based upon evidence outside of the record. Specifically, Wagers argues that any settlement discussions would have been outside of the record and the pertinent testimony of the witnesses counsel failed to call was not in the record because the witnesses did not testify. Wagers also maintains that he demonstrated sufficient operative facts to establish substantive grounds for relief and he was entitled to a hearing to consider his assertion that he was unaware of the state's plea offer.

[*P18] As the trial court noted, all the witnesses Wagers offers now by affidavit or otherwise were disclosed by the state or the defense in discovery. Wagers knew the identity of the witnesses, including Wagers' mother, sister, stepson, and a minor relative, and the likely content of their testimony before trial. Therefore, trial counsel's failure to call those witnesses or introduce certain evidence on these issues could have been raised in Wagers' direct appeal. Further, a review of the decision issued in Wagers' direct appeal reveals that one of his arguments was raised and rejected in that appeal; specifically, Wagers previously raised as an alleged error the fact that there was trial testimony that he was in prison.

[*P19] In reference to the plea offer — which is the only point the trial court found would arguably not be barred by res judicata — the trial court found Wagers had not raised grounds for relief and was not entitled to a hearing.

[*P20] The trial court stated that Wagers "does not claim that he was not aware of a plea offer. Rather, he claims that he 'has not seen the case settlement proposal until today.'" The trial court said there was "ample evidence in the record (via the State's response to Defendant's discovery request) that the Defendant was aware of a plea offer involving a ten-year sentence." [parenthetical in original.] The court said, "in the face of the evidence in the record, the claim that Defendant had not seen the settlement proposal, even if true, does not mean that he was not advised of the proposal. Clearly he was and clearly he decided to 'take it to the box,' meaning take it to trial."

*State v. Wagers*, 2012 Ohio 2258, 2012 Ohio App. LEXIS 1976 (Ohio App. 12th Dist. May 21, 2012)(herineafter "*Wagers PC*".) Here again the court applied *State v. Bradley*, noted above as the Ohio caselaw embodiment of *Strickland, supra.*

With the exception of the failure to communicate the plea offer claim, the court of appeals did not reach the merits, but rather upheld the trial court finding that the claims were barred by *res judicata*. Under that doctrine as applied to criminal cases in Ohio, a constitutional claim which can be brought on direct appeal but which is omitted is then barred from presentation in post-conviction.

17

Ohio's doctrine of *res judicata* in criminal cases, enunciated in *State v. Perry,* 10 Ohio St. 2d 175 (1967), is an adequate and independent state ground of decision.  *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones,* 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977);  *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986);  *Engle*, 456 U.S. at 110;  *Wainwright,* 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963). *Coleman,* 501 U.S. at 724.

Wagers' Ground Three for Relief is procedurally defaulted by his failure to present these claims on direct appeal, with the possible exception of the failure to present a plea offer claim. As to that claim, the court of appeals found the trial court was correct in finding sufficient

evidence that trial counsel had communicated the offer of a ten-year sentence and Wagers had rejected the offer.

Wagers' Third Ground for Relief should be dismissed with prejudice.

## Ground Four:  Defective Indictment

In his Fourth Ground for Relief, Wagers asserts the State denied him due process of law because the Indictment had "carbon-copy" charges covering a four-year period which did not allow the jury to differentiate charges.  He also asserts the sexually violent predator charges were improper and the Indictment violated Ohio Revised Code § 2971.01 as it was in effect in the relevant time span.

The claims were raised as the First Assignment of Error on direct appeal which the court of appeals decided as follows:

> [*P5] Assignment of Error No. 1:
>
> [*P6] "APPELLANT WAS DENIED DUE PROCESS AND A FAIR TRIAL UNDER ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION BY STRUCTURAL AND CONSTITUTIONAL ERROR THAT OCCURRED WHEN HE WAS CONVICTED UPON AN INSUFFICIENT AND DEFECTIVE INDICTMENT THAT INCLUDED CARBON COPY COUNTS WITH FOUR YEAR OFFENSE DATE RANGES, IMPROPER SEXUALLY VIOLENT PREDATOR SPECIFICATIONS AND NO SPECIFIC UNDER 10-YEAR OLD [sic] VICTIM OFFENDER SPECIFICATIONS. THE INDICTMENT ALSO VIOLATED R.C. § 2971.01 AS IT EXISTED DURING THE ALLEGED OFFENSE RANGE."
>
> [*P7] Appellant argues the indictment was defective, and because of the alleged deficiencies, he was denied due process and a fair trial. The record reflects, however, that appellant failed to

challenge the sufficiency of this indictment at any time before or during his trial. Where a defendant fails to object to the form of the indictment prior to trial, as required by Crim.R. 12(C), he waives all but plain error. *State v. Carnes*, Brown App. No. CA2005-01-001, 2006 Ohio 2134, P21; *State v. Persinger*, Morrow App. No. 08-CA-14, 2009 Ohio 5849, P21.

[*P8] Crim.R. 52 governs harmless and plain error, stating that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Ohio law recognizes that plain error does not exist unless, but for the error, the outcome of the trial would have been different. *State v. Cox*, Butler App. No. CA2005-12-513, 2006 Ohio 6075, at P21, citing *State v. Haney*, Clermont App. No. CA2005-07-068, 2006 Ohio 3899, P50. Further, "notice of plain error is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.*

[*P9] For ease of discussion, we will separately address each of appellant's issues regarding the indictment.

*"Carbon copy" indictment*

[*P10] Appellant first argues the indictment was defective because it contained five carbon copy rape counts and four carbon copy sexual battery counts that alleged sexual abuse upon J.W. during a four-year time period ranging from June 12, 2001 - June 11, 2005. Appellant asserts the carbon copy counts violated his due process rights, as he was not effectively put on notice of and could not defend against the individual charges against him.

[*P11] In general, an indictment is constitutionally adequate if it (1) "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," and (2) "enables him to plea an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States* (1974), 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L. Ed. 2d 590. "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" Id., quoting *United States v. Carll* (1882), 105 U.S. 611, 612, 26 L. Ed. 1135.

[*P12] Appellant relies upon *Valentine v. Konteh* (C.A.6, 2005), 395 F.3d 626, to support his argument that his constitutional due

20

process rights were violated when he was convicted of five counts of rape and four counts of sexual battery. In *Valentine*, the defendant was convicted of 20 counts of rape of a child and 20 counts of felonious sexual penetration, and the counts of each crime were identically worded. The appellate court ruled that the identical indictments violated the Constitution because there were no distinctions made at any time before or during trial to differentiate one incident of sexual abuse from another in order to match each charge with a specific incident. The failure to do this violated the ordinary rules of notice, jury unanimity, double jeopardy, and sufficiency of the evidence. The court also noted that the prosecution could cure such identical indictments by delineating the factual bases for each count either before or during the trial, so that the judge, defendant, and jury could distinguish one count from another.

[**P13**] In the case at bar, the indictment contained five counts of rape, identically worded to one another, and four counts of sexual battery, also identically worded. Prior to and during trial, however, the state adequately differentiated between the counts of rape and sexual battery that involved J.W. such that appellant's due process rights were not violated.

[**P14**] Appellant requested a bill of particulars, which the state filed with the court on March 11, 2009. The bill of particulars contained a detailed basis for each of the counts contained in the indictment. Furthermore, the state provided appellant discovery containing the taped forensic/medical interview with J.W., wherein she discussed the offenses described in the bill of particulars. Finally, J.W. testified at trial where she clearly described each incident as set forth in the bill of particulars.

[**P15**] If, as alleged, the bill of particulars was insufficient to clarify the indictment, appellant could have requested amendment by the state. His failure to do so precludes him from establishing prejudice. *State v. Bennett*, Brown App. No. CA2004-09-028, 2005 Ohio 5898, P34 (reversed on other grounds). Thus, appellant's constitutional right to due process was not violated. See *State v. Bell*, 176 Ohio App.3d 378, 2008 Ohio 2578, P106-111, 891 N.E.2d 1280; *State v. Rice*, Cuyahoga App. No. 82547, 2005 Ohio 3393, P24; *State v. Kring*, Franklin App. No. 07AP-610, 2008 Ohio 3290, P52;

*Time of the alleged offenses*

[**P16**] Appellant also argues for the first time on appeal that the

indictment was defective because it did not "sufficiently specify the time of the alleged offenses."

[*P17] Specificity as to the time and date of an offense is ordinarily not required in an indictment. *State v. Collinsworth*, Brown App. No. CA2003-10-012, 2004 Ohio 5902, P22, citing *State v. Sellards* (1985), 17 Ohio St.3d 169, 171, 17 Ohio B. 410, 478 N.E.2d 781. See, also, *Tesca v. State* (1923), 108 Ohio St. 287, 1 Ohio Law Abs. 485, 1 Ohio Law Abs. 877, 140 N.E. 629 (holding exact date and time are immaterial unless exactness of time is an essential element of offense). An indictment is sufficient if it states that the offense occurred at some time prior to the filing of the indictment. R.C. 2941.03; *Sellards* at 171.

[*P18] In addition, where the crimes alleged in the indictment constitute sexual offenses against children, indictments need not state with specificity the dates of alleged abuse, so long as the state establishes that the offense was committed within the time frame alleged. *Persinger* at P31 (citations omitted). Not only are the specific dates and times not elements of these crimes, but the exact times and dates of the alleged offenses cannot always be determined, as many child victims are unable to remember exact dates over extended periods of time. *Id*.; *Bennett* at P31.

[*P19] We recognize that an exception to this general rule exists when the failure to allege a specific date results in material detriment to a defendant's ability to fairly defend himself, as would be the case where an accused asserts an alibi. *State v. Mundy* (1994), 99 Ohio App.3d 275, 650 N.E.2d 502; *Bell* at P96.

[*P20] In the case at bar, however, appellant does not assert an alibi, instead claiming that such abuse never occurred. Because the dates and times are not essential elements of the charging statutes as provided in the indictment, and because the failure to allege specific dates did not prejudice appellant's ability to defend himself, appellant's argument is without merit. See *Collinsworth* at P22; *Persinger* at P34; *Bell* at P98-99; *Carnes* at P24.

"*10-year-old victim specification*"

[*P21] Appellant next argues that the indictment was defective because it "did not contain a specific ten-year old [sic] victim specification, which can lead to the imposition of a sentence of life imprisonment without parole pursuant to R.C. 2971.03(A)(2)." Notably, appellant fails to cite to any case law or statute for the proposition that the state must include a specification in the

indictment providing the victim is under ten years of age. App.R. 16(A)(7).

[*P22] If a person is found guilty of R.C. 2907.02(A)(1)(b), i.e. that he has engaged in sexual conduct with a person under 13 years of age, then he is guilty of a first-degree felony. Under R.C. 2907.02(B), the penalty from the finding of guilt is raised to a mandatory life sentence if either the offender used force or threats of force, or if the victim was under ten years of age. Thus, the fact that the victim was under ten years of age is not required to prove guilt under R.C. 2907.02(A)(1)(b); it is only a finding that would enhance the penalty thereof. A fact or specification that does not elevate the degree of a crime but merely enhances the penalty is not required to be included in the indictment. See *State v. Allen* (1987), 29 Ohio St.3d 53, 29 Ohio B. 436, 506 N.E.2d 199; *State v. Fairbanks*, 172 Ohio App.3d 766, 2007 Ohio 4117, P21, 876 N.E.2d 1293; *State v. Baer*, Harrison App. No. 07 HA 8, 2009 Ohio 3248.

[*P23] As discussed below, an offender cannot be specified as a sexually violent predator unless the SVP specification is charged in the indictment or count in the indictment. R.C. 2941.148. In fact, the Revised Code precludes the application of all the specifications contained in R.C. 2941.14 through 2941.1416, unless these specifications are properly included in an indictment. The General Assembly did not include such a mandate in R.C. 2907.02(B). The legislature is presumed to have considered and included all of the situations in which a specification is required to be charged in the indictment. See *State v. Davis* (1988), 38 Ohio St. 3d 361, 374, 528 N.E.2d 925, citing *State v. Penix* (1987), 32 Ohio St.3d 369, 376, 513 N.E.2d 744 (Holmes, J., dissenting). Thus, under the doctrine *inclusio unius est exclusio alterius*, we will not apply such a requirement to this penalty enhancement for a victim who was under ten years of age, as provided in R.C. 2907.02(B).

[*P24] Moreover, the indictment contained the range of dates of the offenses and the victim's date of birth, and therefore put appellant on notice that the victim was under the age of ten. Accordingly, appellant's argument is wholly without merit.

*Sexually Violent Predator ("SVP") specifications*

[*P25] Appellant also argues the indictment should not have contained any SVP specifications under R.C. 2941.148 and R.C. 2971.01(H)(1) because "these statutes existed up to April 29, 2005, which is at the end of the offense date range in the indictment."

23

Appellant also asserts the state and the trial court were "under the mistaken impression that the current version of these statutes should apply to [appellant's] case."

[*P26] It has long been recognized that "any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime after its commission, or which deprives one charged with the crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto." *Dobbert v. Florida* (1977), 432 U.S. 282, 292, 97 S.Ct. 2290, 53 L. Ed. 2d 344. Likewise, a statute that "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past" violates the Ohio Constitution's ban on retroactive laws. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 106, 522 N.E.2d 489 (reversed on other grounds); *State v. Walls*, 96 Ohio St.3d 437, 2002 Ohio 5059, P10, 775 N.E.2d 829.

[*P27] An SVP specification must be charged in an "indictment, count in the indictment, or information charging the sexually violent offense or charging the designated homicide, assault, or kidnapping offense." R.C. 2941.148(A).

[*P28] Prior to April 29, 2005, R.C. 2971.01(H)(1), defined a sexually violent predator as "a person who *has been convicted of or pleaded guilty to* committing, on or after January 1, 1997, a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." (Emphasis added.)

[*P29] In *State v. Smith*, 104 Ohio St.3d 106, 2004 Ohio 6238, 818 N.E.2d 283, the Ohio Supreme Court considered the definition in the context of an offender whose prior convictions were committed prior to January 1, 1997, but whose indictment contained an SVP specification based on the conduct in the underlying offense contained in the same indictment. The court held that a "conviction of a sexually violent offense cannot support the specification that the offender is a sexually violent predator as defined in R.C. 2971.01 (H)(1) if the conduct leading to the conviction and the sexually-violent-predator specification are charged in the same indictment." *Id.* at syllabus. The court also noted that had the General Assembly intended that a conviction on a sexually violent offense to be sufficient to prove an SVP alleged in the same indictment, it would have used language like "a sexually violent

predator is a person who *'committed'* a sexually violent offense." Id. at P27. (Emphasis in original.)

[*P30] Four months after the court's holding in *Smith*, the legislature amended the statute, effective April 29, 2005. R.C. 2971.01(H)(1) now states that a "[s]exually violent predator" is "a person who, on or after January 1, 1997, *commits* a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." (Emphasis added.) Notably, in the opening paragraph of the statutory changes in H.B. 473, the legislature stated that the purpose of the change to R.C. 2971.01(H)(1) was "to clarify that the Sexually Violent Predator Sentencing Law does not require that an offender have a prior conviction of a sexually violent offense in order to be sentenced under that law." 2004 Ohio Laws File 163 (Am. Sub. H.B. 473).

[*P31] The Ninth District compared the versions of the statute pre- and *post-Smith* and found that under the current version, a person need only have committed a sexually violent offense after January 1, 1997, and such finding can be made based on the conviction(s) of the underlying offense(s) contained in the indictment. *State v. Hardges*, Summit App. No. 24175, 2008 Ohio 5567.

[*P32] As stated, appellant was charged with offenses that occurred between June 12, 2001, and June 11, 2005. Appellant has no prior convictions for sexually violent offenses, aside from his convictions in the case at bar. Therefore, under the previous version of the statute, the specifications would have been improperly included in the indictment. Under the current version of R.C. 2971.01(H)(1), however, the SVP specifications would have been properly included, and a determination by the court or jury would mandate a term of life imprisonment without parole. R.C. 2971.03.

[*P33] The record in this case provides evidence that appellant did commit a sexually violent offense after the April 29, 2005 effective date of the amended statute. Thus, the application of the current version of the statute would not violate the constitutional ban *on ex post facto* laws.

[*P34] Stephanie Eichorn, appellant's ex-wife and J.W.'s mother, testified that the family moved to 53 North Main Street, Camden, Ohio, sometime in 2004, when J.W. was nine years old. J.W. lived at that house until she went to live with her aunt on May 19, 2005. During the interview with a social worker at Nationwide Children's Hospital in Columbus, Ohio, J.W. stated that appellant sexually

abused her every other day while living at 53 North Main. Although this evidence lacks specific dates, it stands to reason that appellant committed a sexually violent offense against his biological daughter after April 29, 2005.

[*P35] Moreover, appellant was on notice that the current version of the statute applies to his case. A main purpose of the Ex Post Facto Clause is to give a defendant fair notice that such punishment is possible under the law. *Carmell v. Texas* (2000), 529 U.S. 513, 120 S.Ct. 1620, 146 L. Ed. 2d 577. The indictment in this case provided appellant with notice that his conduct is subject to the revised version of R.C. 2971.01, as the stated offense range ended June 11, 2005. In addition, the bill of particulars included the evidence from J.W.'s interview that indicated the sexual abuse took place every other day at the house on 53 North Main Street. Accordingly, we find appellant's argument unpersuasive.

*Wagers DA*, ¶¶ 5-35.

The court of appeals enforced against Wagers his procedural default in failing to raise claims about the asserted defects in the Indictment before trial when it reviewed these claims only for plain error. See ¶¶ 7-8. Ohio has a rule requiring that asserted defects in an indictment be raised before trial. Ohio R. Crim. P. 12(C). In reviewing for plain error, the court of appeals was enforcing rather than waiving that default. Reservation of authority to review in exceptional circumstances for plain error is not sufficient to constitute application of federal law. *Cooey v. Coyle,* 289 F.3d 882, 897 (6th Cir. 2002); *Scott v. Mitchell,* 209 F.3d 854 (6th Cir. 2000). A state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F.3d 239 (6th Cir. 2001), *citing Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason*

*v. Mitchell,* 320 F.3d 604 (6th Cir. 2003).  However, the opinion of a state court on plain error review is still entitled to AEDPA deference if the federal court reaches the merits despite the procedural default.  *Fleming v. Metrish*, 556 F.3d 520, 532 (6th Cir. 2009).  Therefore the Fourth Ground for Relief is procedurally defaulted.

Alternatively, the decision of the court of appeals on this Assignment of Error is neither contrary to nor an objectively unreasonable application of clearly established Supreme Court precedent.  As the Sixth Circuit held in *Valentine v. Konteh,* 395 F.3d 626 (6th Cir. 2005), the key federal constitutional question with respect to an indictment is whether it contains the elements of the charge, gives the defendant adequate notice of the charges, and protects against double jeopardy.  *Id.* at 630-631, *citing Russell v. United States*, 369 U.S. 749 (1962); and *United States v. Cruikshank*, 92 U.S. 542 (1875).  The grand jury clause of the Fifth Amendment is not applicable to the States.  *Id.* at 631, *citing Hurtado v. California,* 110 U.S. 516 (1884), but the Due Process Clause of the Fourteenth Amendment protects a defendant's interests in sufficient notice and double jeopardy protection.  However, there is no federal constitutional prohibition against satisfying the notice requirement by a detailed bill of particulars such as was done in this case.  Nor did the inclusion of the sexually violent predator specifications violate the Ex Post Facto Clause.

Wagers' Fourth Ground for Relief should be dismissed with prejudice.


### Ground Five:  Failure to Bifurcate


In his Fifth Ground for Relief, Wagers asserts he was denied due process when the trial court did not bifurcate trial of the underlying offenses from trial of the sexually violent predator

27

specifications. This claim was raised as Wagers' Second Assignment of Error on direct appeal and decided by the court of appeals as follows:

[*P36] Assignment of Error No. 2:

[*P37] "APPELLANT WAS DENIED DUE PROCESS AND A FAIR TRIAL UNDER ARTICLE I, SECTIONS 5 AND 10 OF THE OHIO CONSTITUTION AND THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION BY STRUCTURAL AND CONSTITUTIONAL ERROR THAT OCCURRED WHEN HE WAS TRIED SIMULTANEOUSLY ON SEX OFFENSES AND ON SEXUALLY VIOLENT PREDATOR SPECIFICATIONS. THE COURT ALSO VIOLATED R.C. § 2971.02."

[*P38] Appellant argues in his second assignment of error that the trial court erred in failing to bifurcate the SVP specifications and the findings of guilt.

[*P39] R.C. 2971.02 sets forth the proper procedure in determining whether an individual is a sexually violent predator. Pursuant to R.C. 2971.02, "[i]f the defendant does not elect to have the court determine the specification, the defendant shall be tried before the jury on the charge of the offense, and following a verdict of guilty on the charge of the offense, the defendant shall be tried before the jury on the sexually violent predator specification."

[*P40] As the state concedes, the trial court erred in failing to bifurcate the guilt and specification phases of the trial. *State v. Bruce*, Cuyahoga App. No. 92016, 2009 Ohio 6214. Appellant, however, failed to raise the issue at trial, and has again waived all but plain error. *See id.*

[*P41] Appellant contends that the failure to bifurcate the guilt and specification phases resulted in structural error. He argues that "[i]n making a simultaneous SVP specification finding, the jury was asked to consider whether [appellant] was likely to commit future violent sex offenses and the consequences of a conviction. [Citation omitted.] Conglomerating the jury's determination of guilt as to the offense with the [SVP] specification improperly allowed the jury to consider future crimes that could occur if they did not convict [appellant]. This dual, simultaneous role tainted the jury and violated [appellant's] rights to an impartial jury, fair trial and due process, and prejudiced him to such a degree to mandate a new trial as structural error."

28

[*P42] A review of the record reveals that the trial court, on numerous occasions, made it clear to the jury that it was to consider the SVP specification only if, and subsequent to, a finding of guilt on the underlying offense. A jury is presumed to follow the instructions given to it by a judge. *Parker v. Randolph* (1979), 442 U.S. 62, 99 S.Ct. 2132, 60 L. Ed. 2d 713 (reversed on other grounds); *State v. Henderson* (1988), 39 Ohio St.3d 24, 33, 528 N.E.2d 1237 (reversed on other grounds). There is no evidence indicating that the jury disregarded the trial court's charge and made a simultaneous finding as appellant suggests.

[*P43] Furthermore, based on the overwhelming evidence in support of the jury's verdict, as thoroughly discussed in appellant's fifth assignment of error, the error was harmless in this case. See *Bruce* at P69; *State v. Clark*, Mahoning App. No. 04 MA 246, 2007 Ohio 1114, at P109. We therefore overrule appellant's second assignment of error.

*Wagers DA*, ¶¶ 36-43.

As the court of appeals' decision makes clear, the trial court committed an error of state law in failing to try the sexually violent predator specifications separate from, and after a finding of guilty on, the underlying sexual offenses. Moreover, on this Assignment of Error, the appellate court did not hold against the Petitioner any failure adequately to raise this claim in the trial court, so there is no enforced procedural default.

However, not every violation of state procedural law rises to the level of a federal constitutional error. Failure to abide by state law is not itself a constitutional violation. *Roberts v. City of Troy*, 773 F.2d 720 (6th Cir. 1985). Violation by a State of its own procedural rules does not necessarily constitute a violation of due process. *Bates v. Sponberg*, 547 F.2d 325 (6th Cir. 1976); *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 228 (6th Cir. 1976). "A state cannot be said to have a federal due process obligation to follow all of its procedures; such a system would result on the constitutionalizing of every state rule, and would not be administrable." *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in

29

part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995). In fact it is commonplace in Ohio to try in one proceeding the underlying aggravated murder charges and the specifications elevating the crime to capital status, although the penalty phase itself is separately tried. Combining the underlying offense with the capital specifications has never been held to violate the Constitution. It is similarly common to try weapons specifications along with underlying drug offenses in federal court without a suggestion of unconstitutionality.

Petitioner's Fifth Ground for Relief should therefore be denied on the merits.

## Ground Six: Erroneous Evidentiary Rulings

In his Sixth Ground for Relief, Wagers asserts violations of the Confrontation Clause and the Fifth, Sixth, and Fourteenth Amendments in the evidence admitted against him as well as denial of due process for failure to grant a mistrial when prejudicial evidence was heard by the jury. The first part of this claim was raised as Assignment of Error Three on direct appeal:

> [*P44] Assignment of Error No. 3:
>
> [*P45] "THE TRIAL COURT ERRED IN ADMITTING AND PLAYING THE INTERVIEW OF THE ALLEGED VICTIM WITH THE CHILD ASSESSMENT CENTER AND ADMITTING THE CHILD ASSESSMENT CENTER REPORT IN VIOLATION OF THE OHIO RULES OF EVIDENCE RELATING TO AUTHENTICATION AND HEARSAY AND THE CONFRONTATION CLAUSES OF THE OHIO AND FEDERAL CONSTITUTIONS."

Insofar as this Ground for Relief raises claims of error by the Ohio courts in administering authenticity and hearsay rules, it is not cognizable in federal habeas corpus. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. §2254(a); *Wilson*

*v. Corcoran,* 562 U.S. ___, 131 S. Ct. 13; 178 L. Ed. 2d 276 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Evidentiary questions generally do not rise to the constitutional level unless the error was so prejudicial as to deprive a defendant of a fair trial. *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir. 1983); *Bell v. Arn,* 536 F.2d 123 (6th Cir. 1976); *Burks v. Egeler*, 512 F.2d 221, 223 (6th Cir. 1975). Where an evidentiary error is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief. *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007); *Bugh v. Mitchell,* 329 F.3d 496 (6th Cir. 2003), *citing Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2000). Courts have, however, defined the category of infractions that violate fundamental fairness very narrowly. *Bugh, quoting Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)(*quoting Dowling v. United States*, 493 U.S. 342, 352 (1990). "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000), *quoting Montana v. Egelhoff*, 518 U.S. 37, 43 (1996). The Supreme Court has defined very narrowly the category of infractions that violate fundamental fairness. *Bey v. Bagley*, 500 F.3d 514 (6th Cir. 2007), *citing Dowling v. United States*, 493 U.S. 342, 352 (1990)(Identification from a trial which resulted in an acquittal could be introduced at second trial for similarities.)

In contrast, of course, the Confrontation Clause claim is clearly a matter of constitutional concern. The court of appeals decided that portion of the claim as follows:

*Confrontation Clause*

[**P58**] Appellant also argues the trial court erred in admitting the statements made by J.W. during her interview because the admission of the evidence violated his constitutional right to confront J.W.

[**P59**] Pursuant to *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L. Ed. 2d 177, regardless of its admissibility under the rules of evidence, a testimonial, out-of-court statement offered against an accused to establish the truth of the matter asserted may only be admitted where the declarant is unavailable and where the accused has a prior opportunity to cross-examine the witness. *Crawford* further states that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." Id. at 59, fn. 9 (citation omitted). See, also, *Jordan* at P24.

[**P60**] Although appellant ultimately chose not to fully cross-examine J.W. at trial on the subject of these prior, out-of-court statements to the social worker, J.W. did testify, and appellant had the opportunity for cross-examination. *Id.* at P25. Therefore, the statements were not admitted in violation of the Confrontation Clause. *Id.*

[**P61**] Moreover, even if appellant had not had the opportunity to confront and cross-examine J.W. about the out-of-court statements, this court has held that the admittance of the hearsay statements do not violate a defendant's right to confront his accusers. *Alkire* at P43. The statements at issue were not testimonial, as they were not made in the context of in-court testimony, nor were they elicited as part of the police investigation or in a sworn statement with the intention of preserving the statements for trial. *Muttart* at P61. As the Ohio Supreme Court held in *Muttart*, "statements made to medical personnel for purposes of diagnosis and treatment are not inadmissible under *Crawford*, because they are not even remotely related to the evils that the Confrontation Clause was designed to avoid." *Id.* at P63. Therefore, appellant's argument is wholly without merit, and his third assignment is overruled.

*Wagers DA*, ¶¶ 58-61.

This decision is neither contrary to nor an objectively unreasonable application of Supreme Court precedent on the Confrontation Clause.  The key point is that the victim was herself a witness at trial and available for cross-examination.  In addition, the principal Ohio Supreme Court case on which the court of appeals relied, *State v. Muttart*, 116 Ohio St. 3d 5 (2007), recognized and applied correctly the Supreme Court's distinction between testimonial and non-testimonial statements by victims.

The second part of Wagers' Sixth Ground for Relief claims he was constitutionally entitled to a mistrial based on inadmissible statements made by the victim and her mother.  This claim was raised as Assignment of Error Four on direct appeal and decided as follows:

> **[\*P62]** Assignment of Error No. 4:
>
> **[\*P63]** "THE COURT ABUSED ITS DISCRETION AND ERRED WHEN IT REFUSED TO GRANT A MISTRIAL AFTER THE STATE'S WITNESSES REPEATEDLY TESTIFIED THAT APPELLANT HAD PREVIOUSLY BEEN IN JAIL AND COMMITTED ILLEGAL ACTIVITIES IN VIOLATION OF OHIO EVIDENCE RULES 404, 608 AND 609 AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION."
>
> **[\*P64]** Appellant argues the trial court erred when it refused to grant a mistrial after two witnesses, J.W. and her mother, Ms. Eichorn, testified that appellant was in jail and that he engaged in illegal activity. The record indicates, however, that appellant's request for a mistrial during the trial was based solely on the two references made to appellant being in jail. Therefore, to the extent that appellant is arguing that Ms. Eichorn's testimony stating that he engaged in illegal activity warrants a mistrial, he has waived all but plain error. See Crim.R. 52.
>
> **[\*P65]** The decision to grant or deny a mistrial rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St. 3d 173, 31 Ohio B. 375, 510 N.E.2d 343, 349-350. The trial court enjoys broad discretion in admitting or excluding evidence. Id. at 350. An appellate court will not disturb the exercise of that discretion absent a showing that the accused has suffered material

prejudice. *Id*.; *State v. Thornton*, Clermont App. No. CA2008-10-092, 2009 Ohio 3685, P11.

[*P66] Although appellant argues that he was denied the right to remain silent and the right to a fair trial, he makes no showing as to how he has suffered material prejudice as a result of the testimony. The trial court recognized that both statements violated the order in limine, which stated that all witnesses should refrain from mentioning that appellant was in prison and that if either side intended to offer the evidence, a bench conference would be held and a ruling made concerning the proposed evidence. As the trial court indicated, however, and the record reveals, the statements by J.W. and her mother stating that appellant was in jail were inadvertent and insignificant. Both witnesses "blurted out" the statements, and there were no prior opportunities for a bench conference.

[*P67] Moreover, the trial court offered appellant a limiting instruction to presumably cure the defect. Trial counsel for appellant opted not to accept the instruction, as he chose not to highlight the issue. A curative instruction is an appropriate remedy, rather than a mistrial, for inadvertent answers given by a witness to an otherwise innocent question. *State v. Mobley*, Montgomery App. No. 18878, 2002 Ohio 1792, 2002 WL 506626, at *2. See, also, *Thornton* at P13. Accordingly, we find the trial court did not abuse its discretion in denying a request for a mistrial.

[*P68] In addition, we find no error, plain or otherwise, in the refusing to grant a mistrial based on Ms. Eichorn's two statements that appellant engaged in illegal activity. Trial counsel for appellant objected to both questions by the state and answers given by Ms. Eichorn. The trial court sustained such objections and later gave the jury instructions to disregard any stricken answers and questions that were sustained. Further, a jury is presumed to follow curative instructions given by the trial court, and therefore, a trial court sustaining an objection and giving a curative instruction has been held to be enough to cure the taint from an improper statement. *State v. Garner*, 74 Ohio St.3d 49, 59, 1995 Ohio 168, 656 N.E.2d 623; *Mobley*, 2002 Ohio 1792, [WL] at *2. Therefore, appellant's fourth assignment of error is without merit.

*Wagers DA* ¶¶ 62-68.

As to the statements made by the victim's mother about Wagers' illegal activities, the

court of appeals enforced Ohio's contemporaneous objection rule with respect to the request for

mistrial; although contemporaneous objections were made to the statements, there was no request for mistrial at that time. Ohio's contemporaneous objection rule — that parties must preserve errors for appeal by calling them to the attention of the trial court at a time when the error could have been avoided or corrected, set forth in *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998) — is an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 131 S. Ct. 185 (2010).

Failure to grant a mistrial as to the other statements about Wagers' being in jail and therefore implying other "bad acts," the Constitution does not require a mistrial under these circumstances. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire*, *supra.*

Petitioner's Sixth Ground for Relief is therefore without merit and should be dismissed with prejudice.

## Ground Seven:  Sentencing Error

In his Seventh Ground for Relief, Wagers asserts he was improperly sentenced to five life terms because the underlying offenses and the sexually violent predator specifications had not been bifurcated for trial and the law in question was not in force at the time of the offenses.  This claim was raised as Assignment of Error Six on direct appeal and decided as follows:

> [*P92] Assignment of Error No. 6:
>
> [*P93] "THE COURT ERRED IN SENTENCING APPELLANT UNDER R.C. § 2971.03."
>
> [*P94] Appellant argues the trial court erred in sentencing him under R.C. 2971.03 because he was "improperly convicted of SVP specifications" and because the court "failed to follow [R.C. 2971.02] and its procedure for determining guilt on SVP specifications." We have already addressed and resolved the issues about which appellant complains in his first and second assignments of error.
>
> [*P95] R.C. 2971.03(A) sets forth mandates for a person who is convicted of or pleads guilty to a violent sex offense and who also is convicted of or pleads guilty to a SVP specification that was included in the indictment. Pursuant to R.C. 2971.03(A)(2), "if the offense for which the sentence is being imposed is * * * an offense * * * for which a term of life imprisonment may be imposed, [the court] shall impose upon the offender a term of life imprisonment without parole." Therefore, we find the court did not err in sentencing appellant to five terms of life imprisonment without the possibility of parole. Appellant's sixth assignment of error is overruled.

*Wagers DA*, ¶¶ 92-95.  As noted above, there is no federal constitutional requirement for separate trials of underlying offenses and specifications.  Furthermore, the court of appeals analysis of the ex post facto claim is not contrary to or an objectively unreasonable application of clearly established Supreme Court precedent.

The Seventh Ground for Relief is without merit and should be dismissed with prejudice.

36

**Ground Eight:  Cumulative Effect**

In his Eighth Ground for Relief, Wagers asserts that the cumulative effect of trial court and trial counsel errors denied him a fair trial.  The court of appeals dealt with this claim summarily, finding there had been no showing of prejudice from any error which occurred. *Wagers DA* ¶ 110.    After enactment of the AEDPA, that claim is not cognizable in federal habeas corpus.  *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir.), *cert. denied,* ___ U.S. ___, 132 S.Ct. 2751 (2011), *citing Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied,* 549 U.S. 1027 (2006); *Moreland v. Bradshaw*, 699 F.3d 908, 2012 U.S. App. LEXIS 23420, 53-54 (6th Cir. 2012).

**Conclusion**

Based on the foregoing analysis, the Petition herein should be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Wagers should be denied a certificate of appealability and this Court should certify to the Sixth Circuit that an appeal would not be taken in objective good faith.

February 1, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).